Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

[Additional Counsel on Signature Page]
*Attorneys for Plaintiff David Greenly and The Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID GREENLEY, individually and on behalf of others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>KOCHAVA, INC.,<br><br>　　　　　　Defendant. | Case No.:  22-cv-01327-BAS-AHG<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# Table of Contents

I.     INTRODUCTION…………………………………………………………....1

II.    FACTS………………………………………………………..…….…………....1

III.   LEGAL STANDARD……………………………………………………………....2

       A.     Legal Standard Under F.R.C.P. 12(b)(6)……………………………..….2

IV.    Legal Standard Related to F.R.C.P. 12(b)(1)……………………………..………3

V.     ARGUMENT…………………………………………………………...….3

       A.     Plaintiff Has Article III Standing…………………………………….….………3

              1.     Plaintiff suffered an injury in fact……….……………….…………3

              2.     Plaintiff adequately alleges a causal connection……………………...…6

              3.     Plaintiff is entitled to injunctive relief…………………………..…8

       B.     Plaintiff States a Claim for Invasion of Privacy (Count 1)………………………9

       C.     Plaintiff Adequately Alleged Kochava Violated the CDAFA (Count 2)…..……12

       D.     Plaintiff States Claims under the CIPA…………………………………...……14

              1.     Violation of the Wiretapping Act (Count 4)………………………..15

              2.     Recording of Confidential Communications (Count 5)……………16

              3.     Use of a Pen Register Device (Count 3)…………………………...…18

       E.     Plaintiff States a Claim Under the UCL (Count 6)………………………………19

              1.     Plaintiff's Future Property Rights in His Data Were Diminished…..……..20

                     a.     The Information Collected by Defendant Has Economic Value…………………………………………………………..20

              2.     Plaintiff's economic loss stems from the diminution of Plaintiff's Future property interests……………………………………………22

              3.     Plaintiff Surrendered More in a Transaction Than Agreed……..…….…23

i

VI.    CONCLUSION……………………………………………...……………..…..24

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**Cases**                                                                                                           **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................3, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................3, 5, 15

*Brodsky v. Apple, Inc.*,
   2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ...................................................14

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................................................... Passim

*Calhoun v. Google LLC*,
   526 F.Supp.3d 605 ...........................................................................................23

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ..........................................................................8

*Catsouras v. Dep't of Cal. Highway Patrol*,
   181 Cal. App. 4th 856 (2010) ..........................................................................9

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................3

*Cryptography Rsch., Inc. v. Visa Int'l Servs. Ass'n*,
   2005 WL 8162448 (N.D. Cal. Feb. 22, 2005) ...................................................5

*Enki v. Freedman*,
   2014 WL 261798 (N.D. Cal. Jan. 23, 2014) .....................................................14

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ............................................................................................5

*Facebook, Inc. v. Power Ventures, Inc.*,
   2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................................................13

*Hammerling v. Google*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .................................................16

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................13, 14

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ..............................................................20

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .................................................................. Passim

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................6

*In re Google, Inc. Privacy Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................11

*In re Google, Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ..................................................12

*In re iPhone Application Litigation*,
  844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) ...................................................11, 16

*In re Meta Pixel Healthcare Litig.*,
  2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ...................................................16

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...........................................................6

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) .........................................................................4, 5

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).....................................................................19, 20, 23, 24

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021).......................................................4, 5, 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, (1992) ...................................................................................4, 8, 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir.2008) ...............................................................................2

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................9

*Matera v. Google, Inc.*,
  2016 WL 8200619 (N.D. Cal. Aug. 12, 2019) ...................................................15

*Navarro v. Block*,
  250 F.3d 729 (9th Cir.2001) .................................................................................2

*People v. Suite*,
  101 Cal. App. 3d 680 (1980) ..............................................................................16

*Planned Parenthood Fed. of America, Inc. v. Center for Medial Progress*,
  402 F. Supp. 3d 615 (N.D. Cal. 2019)................................................................17

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ..............................................................................19

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...................................................15

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) ...................................................11

*Safari Club Intl. v. Rudolph*,
  862 F.3d 1113 (9th Cir. 2017) ............................................................................17

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir.2004) ...............................................................................3

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ..............................................................................................2

*Smith v. Maryland*,
  442 U.S. 735 (1979) ............................................................................................18

iv

*Spokeo v. Robins*,
    578 U.S. 330 (2016) ...................................................................................3, 4
*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) .....................................................................................9
*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................3, 4
*U.S. v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ..........................................................................18
*Urbaniak v. Newton*,
    226 Cal. App. 3d 1128 (1991) .........................................................................9
*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................3, 4
*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...........................................11, 12
*Zynga*,
    750 F.3d .................................................................................................16, 18

**Statutes**

Cal. Bus. & Prof. Code § 17204................................................................21, 23
Cal. Penal Code § 502(a)................................................................................12
Cal. Penal Code § 502(c)................................................................................12
Cal. Penal Code § 630 ...................................................................................14
Cal. Penal Code § 631 .............................................................................15, 17
Cal. Penal Code § 631(a) ...............................................................................15
Cal. Penal Code § 632(c) ...............................................................................17
Cal. Penal Code § 638.50(b) ....................................................................18, 19
Cal. Penal Code § 638.51(a) ..........................................................................18
Cal Penal Code § 632 ..............................................................................15, 17
California Penal Code §§ 638.51, 631, 632 ....................................4, 15, 18, 19

**Rules**

F.R.C.P. 12(b)(1) .............................................................................................3
F.R.C.P. 12(b)(6) .........................................................................................2, 5
Fed. R. Civ. P. 8(a)(2) .....................................................................................3
Rule 8 .............................................................................................................3

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff David Greenley files this Memorandum in Opposition to Defendant Kochava's ("Defendant" or "Kochava") motion to dismiss the First Amended Complaint (FAC) (*Dkt. # 10*).

## I. INTRODUCTION

This case is simple. Kochava developed and marketed a software development kit (SDK) that allowed applications downloaded to Plaintiff's and Class Members' cell phones to install a software tracking device without their knowledge or consent. Once this "bug" was placed on Plaintiff's and Class Members' phones, it collected an array of data about them, including website information, IP addresses, browser and device information, user IDs, data on what videos and advertisements are viewed, and even the user's home network SSID, as well as highly-sensitive geolocation data. Defendant's surreptitious interception of communications and data gathering is illegal under a variety of state and federal laws.

Defendant's far-reaching motion is premised on the mistaken belief that Plaintiff is required to prove each and every one of his claims at the pleading stage. Nothing could be further from the truth. The Federal Rules only require Plaintiff to make a short, plain statement of facts showing that the pleader is entitled to relief. Even a cursory glance at Plaintiff's FAC demonstrates that he has pled far more than threadbare recitals or conclusory allegations and undoubtedly has met his burden to plead sufficient facts that, if true, state a claim for relief. Indeed, Plaintiff alleges in detail how Defendant secretly tracked his location, intercepted communications, and aggregated other sensitive data from his cell phone without his knowledge or consent.

Plaintiff plausibly alleges that Defendant did not first disclose and obtain consent to the use of its SDK to intercept the transmission of his confidential communications or otherwise invade his privacy in violation of multiple state and federal privacy laws. No more is required, and Defendant's motion to dismiss should be DENIED in its entirety.

## II. FACTS

Plaintiff has filed a factually rich and detailed complaint which will not be repeated here. In short, Plaintiff alleges that he has installed and used applications ("apps") on his cellular telephone ("phone") into which—unbeknownst to him and absent his consent—Defendant's software development kit ("SDK") has been integrated, and that Defendant thereafter uses its SDK

to surreptitiously intercept Plaintiff's communications, data, geolocation, and other interactions ("private information") and communicates that private information to others. (FAC ¶¶23-25; 36-40; 45-59; 67; and 84-85.) The data Defendant surreptitiously collects through its SDK includes a variety of website information, as well as Plaintiff's and Class Members' respective IP addresses, browser and device information, user IDs, geolocation data, and other sensitive data. (FAC ¶¶77-81.) For example, Defendant's SDK intercepts, gathers and transmits data and communications that reveal a user's gender, as well as their longitude, latitude, country, state, and city when they communicate with an app. (FAC ¶82.) Defendant's SDK even tracks a user's cell phone *after* they have proactively turned tracking off and declined to share data with an app. (FAC ¶72.) Defendant then uses this private information to "fingerprint" individuals across the internet in order to generate revenue from the targeted marketing and sale of this information to third parties. (*Id.*)

This conduct, as alleged, constitutes a violation by Defendant of Plaintiff's fundamental right of privacy and implicates a myriad of state and federal violations that give rise to his claims, as more detailed in the FAC.[1]

## III. LEGAL STANDARD

### A. Legal Standard Under F.R.C.P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). For a motion to dismiss for failure to state a claim the Federal Rules of Civil

---

[1] Defendant's Motion largely ignores these well pled facts and the majority of the allegations that comprise the totality of Plaintiff's Complaint. Defendant instead cites to only a few paragraphs in the FAC, (*e.g.*, ¶¶ 67, 103, 104, and 105), that are mere recitations of Kochava's own marketing materials or public statements. As set forth more fully below, Defendant's characterization of these few paragraphs as "admissions" by Plaintiff is disingenuous and simply wrong.

Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard that Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555).

## B. Legal Standard Related to F.R.C.P. 12(b)(1)

A challenge to subject matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). A motion to dismiss for lack of standing is a facial attack which requires the court to "accept as true all the material allegations" and "construe the complaint in favor of the complaining party". *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

## IV. ARGUMENT

## A. Plaintiff Has Article III Standing

As Defendant acknowledges, a plaintiff has article III standing so long as that plaintiff has adequately alleged "(1) he suffered a 'injury in fact,' (2) that is fairly traceable to the defendant's conduct and (3) [that is likely to] be redressed by a favorable decision." Def.'s MTD at 10 (citing *Spokeo v. Robins*, 578 U.S. 330 (2016)). Plaintiff's allegations are more than sufficient to satisfy these requirements at the pleading stage.

### 1. Plaintiff suffered an injury in fact.

Defendant begins its argument by claiming that statutory rights cannot confer standing where standing did not previously exist. MTD at 11. This is both irrelevant and untrue. It is irrelevant because the disclosure of private information has long been recognized as one of the traditional harms giving rise to Article III standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information"). Because Kochava's invidious collection and brokering of Plaintiff's private information constitutes such a traditional harm, standing exists regardless of whether there exists a separate statutory right that also confers standing.

Ninth Circuit precedent overwhelmingly shows that online privacy violations confer Article III standing. *See, e.g., Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 681 (N.D. Cal. 2021) ("A violation of substantive privacy rights 'gives rise to a concrete injury sufficient to confer standing.'") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). Defendant argues that "Plaintiff cannot plausibly allege . . . that he personally has lost the opportunity to sell his data or that the value of his data was somehow diminished after it was collected by Kochava," Def.'s MTD at 12, but such a showing is not required. As the Ninth Circuit has recognized, the misappropriation of personal information alone constitutes an injury in fact because it causes consumers to reasonably fear their personal information will later be misused. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). In other words, the invasion of Plaintiff's privacy **itself** constitutes harm. *See TransUnion*, 141 S. Ct. at 2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information"); *Lopez*, 519 F. Supp. 3d at 681 ("A violation of substantive privacy rights 'gives rise to a concrete injury sufficient to confer standing.'"); FAC ¶¶ 131–136 ("Plaintiff and Class Members were harmed by the invasion of their privacy.").

But even were Kochava's misconduct not a traditional harm conferring standing (it is), the Supreme Court repeatedly has affirmed that Congress may "elevat[e]" injuries "previously inadequate in law" to legally cognizable "concrete" injuries. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578, (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.") (internal citations and quotations omitted). As thoroughly detailed in the Complaint, Defendant's conduct violates Plaintiff's California Constitutional right to privacy, the California Penal Code §§ 638.51, 631, 632, and the California Unfair Competition Law, *see* FAC ¶¶ 152–235. Plaintiff has standing to sue under these laws.

Defendant thus is left to argue that Plaintiff's claims fail because "Plaintiff's sole allegations of claimed injury and harm are conclusory." Not so. Plaintiff specifically alleges that

he "owns a mobile cellular telephone phone that use application(s) containing the Defendant's software development kit (SDK)," FAC ¶ 37; that "Defendant utilizes its embedded SDK to track his geolocation, and to monitor and intercept communications related to his personal characteristics," *id.* ¶ 38; and that Defendant sells access to this data on online marketplaces, *id.* ¶ 50, and to corporate giants such as Disney, Hilton, NBC, and Roku, *id.* ¶ 83. Plaintiff also illustrates in excruciating detail just how Defendant does this. FAC ¶¶ 43–85. This is more than sufficient at the pleading stage. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)) (To survive a Rule 12(b)(6) motion, a complaint need only contain a statement of a claim that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Defendant's demands for more specifics than this before discovery are contrary to the law and are particularly perverse because any more specific evidence and information regarding when and how Kochava collected and sold Plaintiff's data are in Kochava's custody and control, not Plaintiff's. *See, e.g., Cryptography Rsch., Inc. v. Visa Int'l Servs. Ass'n,* No. 04-CV-04143-JW, 2005 WL 8162448, at *4 (N.D. Cal. Feb. 22, 2005) (noting that a "plaintiff cannot be expected to have personal knowledge of the facts constituting the wrongdoing" where "the facts at the pleading stage are largely in the defendant's control.").

Nor do Plaintiff's pleadings, as Defendant contends, "fail[] to show that the alleged violations affected Plaintiff and Class Members themselves." Def.'s MTD at 12. Plaintiff has sufficiently alleged that Kochava tracked and sold his private information without his consent. *See generally*, FAC ¶¶ 43–124. Defendant's attempts to construct artificial hurdles to Plaintiff's pleadings should be given the short shrift they deserve. Plaintiff is not required to "provide [examples] of a communication that was allegedly 'intercepted' or 'recorded' by Kochava," nor is he required to "allege any specific instances of locations where he or other Class Members were 'tracked'" because "[a] violation of substantive privacy rights" itself "gives rise to a concrete injury sufficient to confer standing." *Lopez*, 519 F. Supp. 3d at 681; *see also Krottner*, 628 F.3d at 1143 (recognizing that misappropriating personal information alone constitutes injury because consumers will reasonably fear that their personal information will later be misused).

Finally, Defendant tries to excuse its own privacy violations by hiding behind the unrelated privacy policies of third-party app developers. Yet, whether app developers obtain consumers' consent to share consumers' data **from those apps** is not at issue in this litigation. Rather, Plaintiff bases his claims on Defendant's collection, packaging, and selling of Plaintiff's and Class Members' data, without their notice or consent. *See Javier v. Assurance IQ, LLC*, No. 20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) ("Consent is therefore generally limited to the specific conduct authorized."); *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (consent is evaluated using principles of contract to determine "whether the user 'agreed'" to the specific use or collection). Defendant essentially seeks to impose a rule whereby a consumer who consents to share information with one party (the app developer) impliedly gives any other company (such as Defendant) *carte blanche* to package and sell that information. No such rule exists.

### 2.    Plaintiff adequately alleges a causal connection.

Kochava's two-pronged lack-of-causation argument fails on both counts. First, Defendant argues that Plaintiff's allegations are "generalized" and "insufficient to establish a particularized injury specific to Plaintiff." MTD at 14. This is just a rehashing of Defendant's failed argument, discussed above, that Plaintiff "has no standing as to any of his claims because the FAC fails to show that the alleged violations affected Plaintiff and Class Members themselves," Def.'s MTD at 12, and the argument fails again for the same reasons discussed above.

Second, Defendant argues that "the conduct at issue originated not with Kochava, but with other third parties[.]" MTD at 14. Defendant mischaracterizes Plaintiff's allegations, and its contention belies a fundamental (and, presumably, self-serving) misunderstanding of the underlying technology. Indeed, while Defendant correctly notes that Plaintiff's and Class Members' data is collected "by way of 'smartphone applications,'" Def.'s MTD at 14, it glaringly fails to explain **how that data comes to be collected by smartphone applications in the first place**. This is made possible through Kochava's SDK, and Plaintiff plainly alleges in his Complaint that "Defendant openly acknowledges that its software development kit (SDK), made

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

available to and inserted by other companies as a plug-in to their own smartphone applications, intercepts and reads massive amounts of consumer data." FAC ¶ 45.

In an attempt to pass the buck to the app developers that use its product, Kochava states that "app developers customize the SDK." Def.'s MTD at 14 (citing FAC ¶ 81). However, the SDK is a code base provided to app developers by Defendant that is designed and written by Defendant **for the purpose of** (unlawfully) collecting Plaintiff's and Class Members' data and to "allow[] apps to communicate with [Kochava's] servers." FAC ¶ 44. App developers can specify *additional* parameters for Defendant to track, FAC ¶ 81, but those additional parameters are not at issue. At issue is the highly sensitive, private location and other personal information tracked **by Defendant's code**, which Defendant itself includes in its SDK. Third-party app developers do not modify Defendant's code. They simply implement that code to do its intended job—monitor and share consumers' private data with Defendant. FAC ¶¶ 82, 84.

Unable to refute the detailed facts actually pled in the FAC, Defendant relies on a gross mischaracterization of one paragraph in the FAC, ¶104, to argue that Plaintiff has admitted that he consented to Defendant's wrongful collection of his data. Over and over again, Defendant suggests that Plaintiff "concedes" or "admits" that he consented and agreed to share his data. Def. MTD at 4, 9, 14, 16, 18, 21, 22. But ¶104 is not an allegation particular to Plaintiff (or any Class Member). It simply is a quote taken from the complaint Defendant filed in its action against the action. FAC ¶ 104; *See also Kochava, Inc. v. Federal Trade Commission*; 2:22-cv-00349-BLW (Dist. Idaho), ¶ 19. A fair reading of ¶104 cannot lead to the conclusion that Plaintiff has "admitted" that he consented to Defendant's wrongful conduct.

Mischaracterization aside, Kochava's argument misses the point. If a third-party app notifies consumers that it collects and shares their data, consumers may consent to that third-party app sharing its information. Even in that case, however, consumers are not consenting to Kochava's interception of their communications with, or information provided to, those third-party applications, or Kochava's subsequent packaging and wholesale reselling of consumers' private data.

In sum: Defendant developed code designed to intercept communications between Plaintiff and Class Members on the one hand, and third-party apps on the other, that reveal Plaintiff's and Class Members' location and other data; packaged that code into an SDK; marketed the SDK specifically for its ability to surreptitiously track and collect consumers' private information; provided the SDK to app developers to deploy in their apps, who then embedded Defendant's code within those apps; and the code then worked as intended in order to transmit to Kochava private location and other data, which Kochava then packaged and sold without consent. FAC ¶¶ 38–51. Far from "fail[ing] to establish the requisite causal connection" or "establish[ing] that the conduct at issue originated not with Kochava," Def.'s MTD at 14, the FAC makes clear both that the conduct at issue originated with Kochava and that Kochava's own code (in the form of its SDK) directly caused Plaintiff's and Class Members' injuries. This easily satisfies Article III's requirement that an injury be "fairly trace[able] to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

### 3.    Plaintiff is entitled to injunctive relief.

To be entitled to injunctive relief, Plaintiff need only plausibly allege "either continuing, present adverse effects due to [his] exposure to [Defendant's] past illegal conduct or a sufficient likelihood that [he] will again be wronged in a similar way." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119–20 (9th Cir. 2020) (finding likelihood of future harm where defendant violated the plaintiffs' right to privacy) (internal quotations and citations omitted). Plaintiff easily meets this requirement. As alleged in the FAC, Defendant's unlawful practices are ongoing and Plaintiff and Class Members are likely to suffer continued harm from Defendant's past conduct. FAC ¶¶ 95–103 (detailing the harm caused by Defendant's practices and noting that "[c]onsumers are therefore unable to take reasonable steps to avoid the above-described injuries"). They also are likely to suffer similar future harms because Defendant's unlawful practices continue to this day.

Defendant does not generally dispute that its unlawful conduct is ongoing. Kochava's **sole argument** against injunctive relief is that the company recently implemented a new feature, Privacy Block, "which removes health services location data from the Kochava Collective marketplace." Def.'s MTD at 15 (citing FAC ¶ 105). Yet, Plaintiff's claims are not limited to

"health services location data." Indeed, Defendant's violation of Plaintiff's and Class Members' privacy was sweeping and wide-reaching. *See, e.g.,* FAC ¶¶ 3 ("Kochava collects a wealth of information about consumers."); 11 ("precise geolocation data . . . may be used to track consumers to sensitive locations, including [but not limited to] places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters."); *see also id.* ¶¶ 95–105 (detailing myriad harms to consumers unrelated to medical data).

The fact that Defendant has ceased sharing one category of sensitive, private consumer data is illustrative. Injunctive relief would compel Defendant to extend its Privacy Block feature to *all* data that Kochava unlawfully brokers.

## B. Plaintiff States a Claim for Invasion of Privacy (Count 1)

Defendant pursues dismissal of Plaintiff's claim for invasion of privacy by cherry-picking the most egregious examples of breach of social norms and erroneously arguing those examples represent the minimum bar to sue. *See* Def.'s MTD at 15–16. While it is indeed egregious to send gruesome photos to consumers' friends and family, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010), publicly disclose patient's private medical information, *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991), and to pose as a mental health professional to learn of intimate details of childhood abuse, *Taus v. Loftus*, 40 Cal. 4th 683 (2007), none of these cases purport to illustrate the minimum bar for a violation of consumers' right to privacy. Defendant here mischaracterizes the bar at the pleading stage, which Plaintiff has hurdled.

As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *In re Facebook, Inc. Internet Tracking Litig.* is instructive. 956 F.3d 589 (9th Cir. 2020). As the Ninth Circuit noted in *Facebook*, "[a]dvances in technology can increase the potential for unreasonable intrusions into personal privacy." *Id.* at 599 (internal citations and quotations omitted). Indeed, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion ... that federal courts are powerless to provide

a remedy when an internet company surreptitiously collects private data ... is untenable." *Id.* (internal citations and quotations omitted).

Like the plaintiffs in *Facebook*, Plaintiff here has alleged an invasion of his right to privacy. *Compare* FAC ¶¶ 152–163; *with Facebook Internet Tracking*, 956 F.3d at 597 (plaintiffs "alleged a number of claims [including] . . . invasion of privacy."). Like Kochava, the defendant in *Facebook* tracked and collected consumers' personal information without notice or consent. *Compare* FAC ¶¶ 1–15 ("Kochava collects a wealth of information about consumers") *with Facebook Internet Tracking*, 956 F.3d at 599 ("Facebook's tracking practices allow it to amass a great degree of personalized information"). And like Kochava, the defendant in *Facebook* collected and correlated consumers' personal information to build a personal "fingerprint" for Plaintiff and each Class Member. *Compare* FAC ¶ 75 ("Defendant is able to deliver targeted advertising . . . by in essence 'fingerprinting' each unique device and user, as well as connecting users across devices and devices across users") *with Facebook Internet Tracking*, 956 F.3d at 599 ("Facebook gained a cradle-to-grave profile without users' consent."). The Ninth Circuit in *Facebook* upheld the district court's decision recognizing the *Facebook* plaintiffs had stated a claim for invasion of privacy, and this Court should do the same.

The *Facebook* court also specifically addressed the question of whether the defendant's conduct "violates social norms," opining that such a determination "requires a holistic consideration of factors." *Id.* at 606. The Ninth Circuit ultimately held that "[t]he ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Id.* Weighing pleadings that mirror Plaintiff's here, the Ninth Circuit ultimately concluded that "[p]laintiffs have identified sufficient facts to survive a motion to dismiss." *Id.* at 606. Like the plaintiffs in *Facebook*, Plaintiff here has sufficiently pled facts to survive dismissal. The extent of Kochava's invasion into Plaintiff's and Class Members' privacy will be revealed in discovery. Defendant simply seeks to avoid that necessary accounting. Its efforts should not be rewarded.

Tellingly, Defendant ignores the controlling *Facebook* opinion, opting instead to base its argument on a series of cases decided by district courts, almost all before the Ninth Circuit decided

*Facebook*. To the extent these opinions find invasions of privacy like the kind in *Facebook* and this case do not violate social norms, *Facebook* overruled them. Even so, these cases are easily distinguishable. In *In re iPhone Application Litigation*, for example, consumers agreed to a privacy policy directly with the defendant, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012), and the defendant maintained that consumers had knowledge and consent of the transmission of this information. *Id.* at 1063. Here, conversely, there is no knowledge or consent, and Kochava has no Terms and Conditions or Privacy Policy that it discloses directly to consumers. *See, e.g.,* FAC ¶ 24. The *only* argument Defendant raises here is the *possibility* that consumers agreed to app developers' disclosure of private information, which as discussed above is completely irrelevant to claims in this case. *See* Sec. IV. A. 1 *supra.*

The remaining cases on which Defendant relies are even further afield. *Lopez v. Apple, Inc.*, implicated sporadic, *unintentional* collection of data. 519 F. Supp. 3d 672, 691 (N.D. Cal. 2021) ("Plaintiffs have not alleged . . . that the scale or pervasiveness of the accidental triggers itself gives rise to a privacy invasion."). And *Ruiz v. Gap, Inc.*, did not even include allegations that the defendant collected or disclosed private information at all. *See* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (plaintiffs' laptops with private information were stolen by a third party). *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) likewise is inapposite because it did not address a claim for invasion of privacy, but rather "intrusion upon seclusion," which requires "intrusion into a private place, conservation, or manner" that is "highly offensive to a reasonable person." *See id.* at 988. To the extent this case draws analogy to *In re iPhone Application Litig.*, this dicta is similarly overruled by the Ninth Circuit's decision in *Facebook*.

Finally, Defendant relies on *Yunker v. Pandora Media, Inc.*, but *Yunker* actually undermines its Motion. No. 11-CV-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013). The *Yunker* court explicitly acknowledged a violation of social norms where companies installed code that "transform[ed] the phones into surreptitious tracking devices," and transmitted fine location data that enabled the defendants to "track their movements, including where they live, work, dine and shop." *Id.* at *14. That is **precisely** what Defendant did here. FAC ¶¶ 43–49. The *Yunker* court nevertheless dismissed the plaintiff's claims because—**unlike**

**Kochava**—the *Yunker* defendant did not build any kind of "fingerprint" by monitoring consumers' data across time. *Yunker*, 2013 WL 1282980, at \*14–15. By doing so, Kochava undoubtedly invaded the privacy rights of Plaintiff and the Class.

### C. Plaintiff Adequately Alleged Kochava Violated the CDAFA (Count 2)

The CDAFA prohibits, *inter alia*, knowingly accessing, and without permission, taking, copying, or otherwise using any data, computer, computer system. *See* Cal. Penal Code § 502(c); *see also* FAC ¶ 167. The California Legislature enacted the CDAFA "to expand the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems" Cal. Penal Code § 502(a); *see also* FAC ¶ 165. Further, in enacting the CDAFA, the California Legislature declared that the "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals . . . ." *Id.* Kochava violated sections 502(c)(1), (c)(2), and (c)(7) of the CDAFA by accessing Plaintiff's and Class Members smartphones without their permission through Kochava's SDK.

With respect to Plaintiff's CDAFA claim, Kochava argues only that the FAC fails to allege that Kochava acted "without permission." Mot. pp. 17-19. Kochava makes this argument in two ways: 1) asserting, based on the mischaracterization of FAC ¶104 described above, that Plaintiff and Class Members "consented" to Kochava's conduct by allegedly voluntarily installing Kochava's SDK on their phones and failing to "opt out" of Kochava's data collection; and 2) asserting that the FAC fails to allege that Kochava circumvented a barrier to access Plaintiff's and Class Members' computers. *Id.* Each of Kochava's arguments is meritless.

First, Kochava bears the burden of proving a consent defense, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021), which Kochava's barebones arguments clearly fail to do. To establish a consent defense, a defendant must have "explicitly notif[ied] users of the practice at issue." *Id.* (quoting *In re Google, Inc.*, 2013 WL 5423918, at \*13 (N.D. Cal. Sept. 26, 2013). Moreover, on a Rule 12(b) motion, the purported notice must have only one plausible interpretation that clearly disclosed the specific practice at issue. *Id.* Kochava's consent defense fails here because Kochava does not provide *any* notice to Plaintiff and Class Members, let alone

a notice subject to a single, reasonable interpretation: that Kochava disclosed it accesses Plaintiff's and Class Members' smartphones and takes, copies, or uses any data thereon. *See Brown*, 525 F. Supp. 3d at 1063-64.

Second, Plaintiff and Class Members cannot have "voluntarily" permitted Kochava to access their smartphones because they were entirely unaware that Kochava's software was emebedded in the apps that they installed on their phones. FAC ¶ 157. The lack of notice defeats any argument that Plaintiff and Class Members knowingly permitted Kochava to access their phones and the data thereon. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015) (rejecting the defendant's consent argument because the plaintiffs alleged that the defendant's software was "deeply hidden" on their phones).

Similarly, Kochava fails to demonstrate that Plaintiff and Class Members can actually "opt out" of Kochava's data collection practices. Defendant again cites to ¶104 of the FAC, which quotes from Kochava's complaint against the FTC. *See* FAC ¶ 104. This short, self-serving response to public allegations against Kochava fails to provide any specific information on how consumers are made aware that they can opt-out of Kochava's data collection practices, let alone actually given an opportunity to opt-out. Further, as alleged in the FAC, Kochava continues to access smartphones and collect data even after consumers take steps to protect themselves. *See* FAC ¶¶ 71-77 (alleging that Kochava bypasses efforts to no-tracking settings on smartphones).

Third, Plaintiff need not allege that defendant circumvented a barrier in order to access his device. Kochava cites outdated caselaw to imply that the *only* manner of accessing Plaintiff's computer "without permission" subject to Section 502 is when "the defendant circumvent[s] a technical or code-based barrier." Def. MTD 19 (citing *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010)). However, "[n]othing in the *Power Ventures* decision held that overcoming 'technical or code-based barriers' designed to prevent access was the *only* way to establish that the Defendant acted without permission." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1099-1100 (N.D. Cal. 2015).

Regardless, even were such allegations required, the FAC sufficiently alleges that Kochava does so. The manner in which Kochava designed its SDK and hid it inside apps "would effectively

render any 'technical or code based' barrier implemented by Plaintiff[] ineffective." *Brown*, 525 F. Supp. 3d at 1075 (quoting *Brodsky v. Apple, Inc.*, 2019 WL 4141936, *9 (N.D. Cal. Aug. 30, 2019); *Carrier IQ*, 78 F. Supp. 3d at 1101). This case is nearly identical to the allegations in *Brown* and *Carrier IQ*—where the courts found that the plaintiffs stated claims for violation of the CDAFA by using hidden code to access the plaintiffs' computers and track their activity. *Compare* FAC ¶¶ 38–40, 59, *with Brown*, 525 F. Supp. 3d at 1075; *Carrier IQ*, 78 F. Supp. 3d at 1101. Moreover, Kochava took active steps to circumvent privacy barriers in the phone; attempts to disable Kochava's software from accessing data and tracking the user are rendered useless. FAC ¶¶ 71-77. Because Kochava designed its SDK to render any barrier useless, the FAC alleges that Kochava accessed Plaintiff's and Class Members computers and the data thereon without permission. The Court should deny Kochava's motion.[2]

### D. Plaintiff States Claims under the CIPA

The California legislature was clear that it enacted CIPA to protect residents' privacy rights, explicitly stating that the legislature was motivated by concerns that:

> advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630. Simply put, CIPA was designed "to protect the right to privacy of the people of the state." *Id.*

Kochava's unlawful conduct implicates those very concerns: Kochava's software was surreptitiously placed on the smartphones that Plaintiff and Class Members carry with them for the sole purpose of invading their privacy by intercepting and collecting data and communications transmitted by their devices.

---

[2] Kochava's reliance on *Enki* is misplaced. There, the sole allegation concerning a so-called barrier concerned the website's terms of use. *See Enki v. Freedman*, 2014 WL 261798, *3 (N.D. Cal. Jan. 23, 2014). In contrast, here, the FAC alleges that Kochava circumvented user's attempts to enact barriers to protect their privacy, such as disabling tracking. *See* FAC ¶¶ 73–74. Kochava, therefore, took active steps to circumvent privacy barriers.

Plaintiff brings three separate claims under CIPA: 1) violation of the California Wiretapping Act, Cal. Penal Code § 631 (Count 4); 2) recording of confidential calls in violation of Cal Penal Code § 632 (Count 5); and use of a pen register device in violation of Cal. Penal Code § 638.51 (Count 3).

### 1. Violation of the Wiretapping Act (Count 4)

The Wiretapping Act imposes liability on any person who, *inter alia*, uses "any machine, instrument, or contrivance, or in any other manner, intentionally taps or otherwise makes any unauthorized connection . . . without the consent of all parties . . . reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication . . . ." Cal. Penal Code § 631(a).

Kochava first argues that its SDK and the related processes by which it intercepts data and communications transmitted by Plaintiff's and Class Members' devices are not a "machine, instrument, or contrivance" within the scope of Section 631(a). Kochava intentionally omits that the Wiretapping Act applies to more than just machines, instruments, and contrivances. Indeed, the Act applies to any person who "by means of any machine, instrument, or contrivance, ***or in any other manner***" taps and reads the content or meaning of any message, report, or communication. *Id.* Kochava's sole authority is *Iqbal v. Twombly*, 550 U.S. at 555, is of no moment: it does not address the California Wiretapping Act or whether software constitutes a machine, instrument, contrivance or other manner of obtaining communications.

As the court explained in *Matera v. Google, Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2019), CIPA, including Wiretapping Act claims under Section 631, evolves with evolving technology. *Id.* at *20 (applying CIPA to email, despite the fact that email did not yet exist when CIPA was enacted). Courts thus have repeatedly applied CIPA to the use of software and code to intercept and read communications. *See, e.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *1-2 (N.D. Cal. Oct. 23, 2019) (holding that use of tracking software on a website violates the Wiretapping Act); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1056 (N.D. Cal. Mar. 12, 2021) (same); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (holding that the plaintiffs stated violations of the Wiretapping Act through allegations that Facebook used plug-

in software on third party websites). The mere fact that Kochava uses computer code to intercept and read communications, instead of a physical device, does not save it from liability under the Wiretapping Act.

Kochava next argues that it did not receive the contents of any communications as the geolocation and other data that Kochava obtains are not content, but instead are automatically generated by Plaintiff's and Class Members' devices. *See* Def. MTD pp.20-21 (citing *In re iPhone App Litig.*, 844 F. Supp. 2d at 1061-62; *Zynga*, 750 F.3d at 1098). However, the data intercepted by Kochava in this case go far beyond the automatically generated location and URL data at issue in the *iPhone App* and *Zynga* cases. As alleged in the FAC, Kochava's SDK intercepts a plethora of data and communications from the smartphones, including the actions, choices, and decisions that users make in the apps that have Kochava's SDK; search terms that users employ, advertisements that user's click on; and products and services that users purchase. *See* FAC ¶¶ 38, 67, 75-82, 125-130, 189. The actions (including clicks), words (including search queries), and other data that Kochava collects constitutes the content of communications. *See Hammerling v. Google*, 2022 WL 17365255, *10 (N.D. Cal. Dec. 1, 2022) (data concerning when and how plaintiff uses apps, and particular activity in the apps, such as the products and services that were searched for or used, constitute content of communications); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, *11 (N.D. Cal. Dec. 22, 2022) (search terms, URLs, and contact information constitutes content when they concern the substance of communications).[3]

Finally, Kochava contends that Plaintiff and Class Members consented to its interception and reading of the communications. As noted above, it is Kochava's burden to establish a consent defense, *see Brown*, 525 F. Supp. 3d at 1063, and Kochava has failed to carry that burden. *See supra*. Moreover, consent is not a defense to a Wiretapping Act claim where the communication is intercepted for the purpose of committing any criminal or tortious act, such as a violating the

---

[3] *People v. Suite*, 101 Cal. App. 3d 680 (1980) is inapposite as, in that case, there was no communication that was intercepted. Instead, the police tapped their own telephone lines and only identified the number of the caller. *Id.* at 683. Here, in contrast, Kochava intercepts communications—which Kochava does not contest—and the contents thereof. *See* FAC ¶¶ 38, 67, 75-82, 125-130.

CDAFA. *See Brown*, 525 F. Supp. 3d at 1063. As such, the Court should deny Kochava's motion to dismiss Plaintiff's claim under Section 631.

## 2. Recording of Confidential Communications (Count 5)

Count 5 of the FAC alleges that Kochava recorded confidential communications in violation of CIPA Section 632. Kochava argues that the communications and data it records from Plaintiff's and Class Members' smartphones are not confidential. Kochava is again wrong.

A communication is confidential when it is made under circumstances that "may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. . . ." Cal. Penal Code § 632(c). Whether a communication is confidential is ordinarily a question of fact for the jury. *Planned Parenthood Fed. of America, Inc. v. Center for Medial Progress*, 402 F. Supp. 3d 615, 694 (N.D. Cal. 2019) (quoting *Safari Club Intl. v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017).

Kochava ignores the allegations in the FAC concerning the types of communications and data that it intercepted, and pretends that it intercepts only IP addresses and emails. *See* Def. MTD p.22. But, as alleged the FAC, Kochava intercepts and records far more data and communications. *See* FAC ¶¶ 38, 67, 75-82, 125-130, 212. Moreover, Kochava ignores that Plaintiff and Class Members took steps to protect the confidentiality of their communications, including disabling tracking on their devices, only for Kochava to circumvent their efforts to maintain privacy. *See* FAC ¶¶ 68-75. Further, unlike emails or messages that can be shared, Kochava records users' activities within apps, which are not intended to be shared with third parties. *See Brown*, 525 F. Supp. 3d at 1073-74 (distinguishing *In re Google Inc.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), because Google intercepted user's internet browsing activities, not messages to others).[4]

---

[4] Kochava also makes a perfunctory argument, based on its continued mischaracterization of FAC ¶104, that Plaintiff consented to Kochava's conduct. For the reasons set forth above, Kochava has not carried its burden, and Plaintiff and Class Members did not consent for Kochava to record their confidential communications, particularly because Kochava did not actually inform Plaintiff and Class Members that it was intercepting and recording their data and communications.

17

### 3. Use of a Pen Register Device (Count 3)

CIPA Section 638.51 makes it unlawful for any person to use a pen register or trap and trace device without first obtaining a court order to do so. Cal. Penal Code § 638.51(a). Kochava makes two meritless arguments in response: 1) Kochava's SDK does not constitute a "pen register" because it is software, not a device; and 2) the FAC fails to allege that Kochava needed a warrant to intercept data and communications from Plaintiff's and Class Members' devices. Both arguments are meritless.

First, Kochava completely ignores that CIPA defines a "pen register" as "a device **or process** that records or decodes dialing, routing, addressing, or signaling information . . . ." Cal. Penal Code § 638.50(b). Contrary to Kochava's assertion, a pen register can be either a device or a "process." Software and computer code that record and decode smartphone communications, activities, geolocation, addressing, signaling and other data certainly a "process." *See* "Process" Merriam-Webster (defining "process" as "a series of actions or operations conducing to an end").[5] Kochava's SDK does just that. *See* FAC ¶¶ 65–74.

*Smith v. Maryland*, 442 U.S. 735 (1979), and *U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008), are entirely irrelevant. Neither case examined the definition of "pen register" under CIPA. Instead, the cases examined whether governments use of a pen register violates the Fourth Amendment. Kochava ignores authority in its own motion: "Fourth Amendment jurisprudence is largely irrelevant to this enterprise of statutory interpretation." *Zynga*, 750 F.3d at 1108.

Kochava's second argument is likewise meritless (and nonsensical). In order for Plaintiff's claim to succeed, Plaintiff was not obligated to establish at the pleading stage that Kochava is required to obtain a court order or warrant to use a pen register—indeed, citing legal authority in a pleading is entirely unnecessary. Further, Section 638.51 itself is legal authority that requires Kochava to obtain a court order. "[A] person may not install or use a pen register . . . without first obtaining a court order . . . ." Cal. Penal Code § 638.51(a). The fact that a government agency may be able to use a pen register without a court order and not run afoul of the Fourth Amendment is

---

[5] Available at: https://www.merriam-webster.com/dictionary/process (last accessed Jan. 6, 2023).

wholly irrelevant to whether a private entity may use such a device or process to record information concerning private individuals.[6]

## E. Plaintiff States a Claim Under the UCL (Count 6)

The California Supreme Court has explained that the phrase "'[i]njury in fact' is a legal term of art" that comes from the "requirements for federal standing under [A]rticle III, section 2 of the United States Constitution." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). "Under federal law, injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.' " *Kwikset* at 322. (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The UCL "incorporate[s] the established federal meaning" of "injury in fact." *Kwikset* at 322.

UCL standing is narrower than Article III standing because Article III standing "may be predicated on a broader range of injuries" than UCL standing. *Kwikset*, 51 Cal. 4th at 324. However, the "economic injury" required by the UCL is a "classic form of injury in fact" under Article III and there is no precedent which suggests that "economic injury" has a different meaning in the UCL context than it does in the Article III context. *Kwikset*, 51 Cal. 4th at 324. And as the Ninth Circuit has explained, the "UCL's "economic injury-in-fact requirement ... demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (emphasis added).

The California Supreme Court has held that "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset* at 323. For example, a "plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset* at

---

[6] To the extent that Kochava argues that its SDK does not record the content to communications—which is unclear from Kochava's argument—not only does the FAC allege that Kochava does record the content, but Plaintiff is not required to allege as such for a violation of Section 638.51. *See* Cal. Penal Code § 638.50(b) (defining a "pen register" as a process that records communications "but not the contents of a communication).

323. Here, Plaintiff has suffered economic injury in two ways. First, his present and future interest in his personal data has been diminished based on Defendant's illegal collection and sale. Second, Plaintiff's data was "acquire[d] in a transaction less ... than he or she otherwise would have[.]"[7]

### 1. Plaintiff's Future Property Rights in His Data Were Diminished.

Plaintiff suffered economic injury in two ways. First, Defendant's illegal collection and sale of Plaintiff's private information diminished the present and future interest thereof. Defendant contends that Plaintiff's data lacks value and, therefore, nothing is lost. Defendant's claim is at odds with its **entire business model**, which is predicated on the value inherent in consumers' private information and the existence of willing buyers. Courts have previously recognized that the data alleged collected here does in fact have economic value, and, accordingly, have overruled similar motions in like cases.

### a. The Information Collected by Defendant Has Economic Value

The crux of Defendant's argument is that the alleged conduct does not qualify as "unfair" or "unlawful" because Plaintiff lacks standing as Plaintiff has not lost "money or property" as a result of the unlawful or unfair business practice. Def. MTD p. 24. Defendant relies on authorities including *In re Facebook Privacy Litig.,* 791 F. Supp. 2d 705 (N.D. Cal. 2011) asserting Plaintiff's data is not "property" and therefore there can be no loss. Def. MTD p. 25. This argument mischaracterizes the claims Plaintiff makes in the FAC; Plaintiff is not making claims attempting to value personal information which may have been gleaned from a website interaction after a user clicks on Defendant's website, rather he is claiming the economic value of the information that was intercepted by Defendant.

Courts have found standing under both the "unfair" and "unlawful" prongs of the UCL arising from conduct similar to that alleged here. *See, e.g, Brown v. Google LLC*, 2012 WL 6064009 at *18

---

[7]     Injury in fact can be shown with loss of money or property. To meet this standard, Plaintiffs "must demonstrate some form of economic injury," which "is itself a classic form of injury in fact." *Kwikset* at 323. Because federal standing "may be predicated on a broader range of injuries," the effect of the "lost money or property" requirement is to "render[ ] standing under [the UCL] substantially narrower than federal standing." *Kwikset* at 324.

(N.D. Cal. 2021) (finding Plaintiffs adequately alleged that they lost money or property as a result of the unfair competition in violation of Cal. Bus. & Prof. Code § 17204 in collecting and selling Plaintiffs data for advertising purposes). Plaintiff had no voluntary interaction with Defendant, and prior to investigating this lawsuit had no knowledge that Defendant existed, hiding in the background of legitimate applications, collecting Plaintiff's private information secretly and unbeknownst to Plaintiff. Kochava's efforts to commercialize and monetize private information it misappropriated absent express (or even implied) consent, violates statutory and common laws concerning the collection and sale of personal data for profit, as detailed herein and in the FAC. *See supra*. Plaintiff and Class Members hold a current and future interest in their data and maintain the right to commercialize it themselves. Plaintiff, specifically, but like other consumers, values his privacy and his valuable private information and did not consent to its collection and sale by Defendant. FAC ¶ 39 By illegally collecting and selling this data, Kochava diminished its current and future value. FAC ¶¶ 39, 77, 95 and 134.

The conduct alleged in the FAC is more outrageous than the conduct that survived dismissal in *Brown*. There, the plaintiff alleged that Google continued to collect personal information even though it claimed users were using its private browsing mode in Chrome. 2012 WL 6064009, at * 1. The information collected in *Brown* included: 1) origins of the website's traffic, 2) demographics, 3) frequency, 4) browsing habits on the website, and 5) other data about visitors. *Id.* at *2. Once collected, Google would then in turn sell this data to Google's advertising customers. *Id.* This is what Defendant is alleged to have done here—collect Plaintiff's private data transmitted through the use of various cell phone applications—albeit data far more private and valuable than that at issue in *Brown*. (FAC ¶¶ 3, 8, 10, 23, 24, 76, and 77).

Should Defendant argue on reply that Plaintiff or Class Members must have paid for and used an app in which Kochava's SDK was embedded to satisfy this requirement, the *Brown* court rejected that very argument. [8]

---

[8] In *Brown*, Defendant, Google, argued that because the majority of plaintiffs used the free version of its Chrome browser, Plaintiffs had no injury. The Court recognized that while there is a version of the Chrome browser that publishers can pay to use, the basic version is free to most users. *Brown* at *2. The Court did not draw a distinction between those

The similarities to *Brown* do not end there. Like here, the plaintiff alleged that Google aggregated the data it unlawfully collected to create individual profiles it then sold to third parties to better target advertisements. *Brown* at *2. Google did so by obtaining the IP address of each visitor. *Brown* at *2. "Because most internet users access the internet using one device and one internet connection, most internet users have one IP address". *Brown* at *2. "Thus, obtaining an internet user's IP address allows Google to track that user across the internet." *Brown* at *2. Kochava's conduct is, for all intents and purposes, identical. (See FAC ¶¶ 39, 77, 134). Defendant tracked Plaintiff through his cell phone, monitored his application selections and interactions with each, and aggregated this data to create a summary, *inter alia*, his physical locations over time that third-parties can purchase and de-anonymize in order to track his movements. As in *Brown*, Plaintiff's allegations suffice.

### 2. Plaintiff's economic loss stems from the diminution of Plaintiff's future property interests.

First, Defendant collects and then sells Plaintiff's personal data. FAC ¶¶ 39, 77, 134. If Plaintiff's personal data lacked value, Defendant would not have a business. This illegal data collection and ultimate sale is Defendant's entire business model. FAC ¶¶ 59-85. There absolutely is value in and a market for this type of personal data, *Brown*, 2012 WL 6064009, *15, and Defendants' disingenuous claims to the contrary should be ignored.

Second, there is a market and value for the information collected by Defendant, which can be quantified. Consumers would be willing to pay $52 per year to keep their browsing history and website interactions private. *Brown*, 2012 WL 6064009, at *2 (citing the SAC in Brown, ¶ 128). The Court in *Brown* relied on allegations by plaintiffs that Google set up a program where it would pay participants up to $3 per week to be tracked on the web, essentially establishing not only a market for this data, but an assigned value. 2012 WL 6064009, at *2 (citing the SAC in Brown, ¶ 130). The

---

using the paid version of Chrome or the free version when concluding that their property rights were affected. Plaintiff would suggest the court follow the same rational, making no distinction between a paid application or a free application. Plaintiff has not identified in his First Amended Complaint which applications he believes are affected by Kochava, but on information and belief there are a number. Of those applications it is believed Kochava secretly collects data through at least one application which requires a paid subscription to meaningfully use.

Court in *Brown* also cited and relied upon plaintiffs' reference to a number of platforms where consumers can monetize their own data.  *Id.*, (citing the SAC in *Brown*, ¶ 135), which include the Brave Web Brower which will pay individuals to watch ads.[9]

As in *Brown*, Plaintiff and Class Members have a right to their own personal data, and with that right comes the ability to sell it themselves, if they so choose.  The fact that Defendant has illegally collected and already sold this data diminishes Plaintiff's and Class Members' future property interests in their own data.  *Brown*, 2012 WL 6064009, at * 15, (citing *Kwikset*, 51 Cal. 4th at 324).  *See also Calhoun v. Google LLC*, 526 F.Supp.3d 605, 613-615, 636.

### 3.    Plaintiff Surrendered More in a Transaction Than Agreed

Plaintiff had his data "acquire[d] in a transaction less ... than he [] otherwise would have." by having his data collected and sold by Defendant, without knowledge or receiving consideration.  *Kwikset*, 51 Cal. 4th at 324. Under this standard, a party who has provided goods or services in a transaction and has not been paid the fair value of those goods or services has suffered an economic injury even though the party has not paid money out of pocket. *Kwikset*, 51 Cal. 4th at 324. The same logic would apply to parties like Plaintiff and the Class, who have unknowingly provided valuable data to Defendant and have received no money in return. Plaintiff has adequately alleged that he "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

Defendant's argument that Plaintiff's data does not meet the definition of "property" "ignores the California Supreme Court's guidance that a UCL claim may be based on any kind of "economic injury."" *Brown*, 2012 WL 6064009, at * 16.  The California Supreme Court has explained that the UCL only requires a plaintiff to "demonstrate some form of economic injury" and that there are "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset*, 51

---

[9] https://lifehacker.com/get-paid-towatch-ads-in-the-brave-web-browser-1834332279#:~:text=Brave%2C%20a%20chromiumbased%20web%20browser%20that%20boasts%20an,a%20more%20thoughtful%20way%20than%20we%E2%80%99re%20accustomed%20to (Lifehacker, April 26, 2019) ("The model is entirely opt-in, meaning that ads will be disable by default. The ads you view will be converted into Brave's cryptocurrency, Basic Attention Tokens (BAT), paid out to your Brave wallet monthly").

Cal. 4th at 323. Plaintiff alleges that Defendant's collection and sale of his data without consent or compensation meets two of the four ways in which a plaintiff can demonstrate economic injury under the UCL: (1) by surrendering in a transaction more, or acquire in a transaction less, than he or she otherwise would have; and (2) the fact Plaintiffs have a present or future property interest which was diminished by sale of their data by Defendant affecting their "future property interest". These injuries have been recognized as economic injury recognized by the California Supreme Court and recognized by subsequent courts in the 9th Cir. *Brown* at * 16 (relying on *Kwikset*, 51 Cal. 4th at 323).

Plaintiff has sufficiently alleged an interest in the data misappropriated and sold by Defendant and met the pleading requirements under the UCL. Defendant's motion to dismiss Plaintiff's sixth and seventh causes of action should be denied.

## V.    CONCLUSION

For the reasons set forth herein, Kochava's Motion to Dismiss is without merit and its Motion should be denied.

Dated: January 16, 2023

Respectfully Submitted,

By: */s/ Joshua Swigart, Esq.*
**SWIGART LAW GROUP**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
Telephone: 866-219-3343
Facsimile: 866-219-8344
Josh@SwigartLawGroup.com

Peter F. Barry
**THE BARRY LAW OFFICE, LTD**
333 Washington Ave No, Suite 300-9038
Minneapolis MN 55401-1353
Telephone: (612) 379-8800
*pbarry@lawpoint.com*

Daniel O. Herrera
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
*dherrera@caffertyclobes.com*
*nhagman@caffertyclobes.com*

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
280 South Beverly Drive
Beverly Hills, CA 90212
Telephone: 619-209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and the Proposed Class*