Craig J. Mariam (SBN: 225280)
cmariam@grsm.com
Hazel Mae B. Pangan (SBN: 272657)
hpangan@grsm.com
Elena A. Kuzminova (SBN: 303838)
ekuzminova@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
KOCHAVA INC.

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID GREENLEY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KOCHAVA, INC.,<br><br>Defendant. | CASE NO. 22-cv-01327-BAS-AHG<br><br>Honorable Cynthia A. Bashant<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND RULE 12(B)(1) [Dkt 11]** |

TO THIS HONORABLE COURT:

Kochava Inc. ( "Kochava") hereby respectfully submits its Reply brief in support of its Motion to Dismiss the First Amended Complaint of Plaintiff David Greenley ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(1).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff Pleads No Cognizable Injury and Thus Lack Standing ..... 1

B. Plaintiff Cannot Meet the High Bar Required to Plausibly State a Claim for Invasion of Privacy ..... 3

C. Plaintiff Fails to Plead "Damage or Loss" and Circumvention, as Required by the CDAFA ..... 4

D. Plaintiff Fails to Plausibly Allege that Kochava Learned the Contents of an Intercepted Communication under CIPA § 631 ..... 6

E. Plaintiff Fails to Plausibly Allege that Kochava Recorded Confidential Communications under CIPA § 632 ..... 7

F. Kochava's SDK Is Not a Pen Register or Trap and Trace Device under CIPA § 638.51 ..... 8

G. Plaintiff's UCL Unlawful Prong and Unfair Prong Claims Fail ..... 9

III. CONCLUSION ..... 10

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807 (2011) .......... 10

*Bradley v. Google, Inc.*, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) .......... 7

*Brodsky v. Apple Inc.*, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......... 7

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 5

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) .......... 10

*Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634 (N.D. Cal. 2021) .......... 10

*Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .......... 5

*Flanagan v. Flanagan*, 27 Cal.4th 766 (2002) .......... 8

*Fredenburg v. City of Fremont*, 119 Cal.App.4th 408 (2004) .......... 2

*Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 7, 10

*Hill v. NCAA*, 7 Cal.4th 1 (1994) .......... 2, 3

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 3, 4, 6

*In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 2, 3

*In re iPhone App. Litig.*, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 3, 4

*In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) .......... 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 10

*In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014)....7

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)....3, 4

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021)....6, 10

*Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530 (S.D. Cal. July 15, 2013)....8

*Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453 (1974)....9

*NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938 (N.D. Cal. 2014)....5

*People v. Blair*, 25 Cal.3d 640 (1979)....9

*People v. Suite*, 101 Cal.App.3d 680 (1980)....9

*Quigley v. Yelp, Inc.*, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)....5

*Revitch v. New Moosejaw, LLC* 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....6

*S.D. v. Hytto Ltd.*, 2019 WL 8333519 (N.D. Cal. May 15, 2019)....7

*Smith v. Maryland*, 442 U.S. 735 (1979)....9

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)....2

*U.S. v. Forrester*, 512 F.3d 500 (9th Cir. 2008)....8

*United States v. Reed*, 575 F.3d 900 (9th Cir. 2009)....7

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018)....5

**Statutes**

California Penal Code Section 502....1, 4

California Penal Code Section 631....6

California Penal Code Section 632....7, 8

California Penal Code Section 638.51....8, 9

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**Treatise**

California Search & Seizure
Section 10:21 .......... 9

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iv-
KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## I. INTRODUCTION

The FAC relies on conclusory labels of data as "private information," but Plaintiff pleads no facts defining what that data is, much less what of his "private" data was allegedly exfiltrated by Kochava. Indeed, Plaintiff has not even alleged what mobile app he was using or in what online activities he was engaged when his unspecified "private" data was allegedly received by Kochava. The only specific data Plaintiff pleads is geolocation data, but he nevertheless fails to allege what of this type of data belonging to him was tracked by Kochava, let alone to what location, sensitive or otherwise, he was tracked. The utter lack of individualized facts in the FAC makes clear that Plaintiff has no injury because none of his "private" information or contents of any communication was received by Kochava through apps in which its SDK was legitimately installed by its customers—the app developers—to enable them to understand and improve their apps' functionality by collecting usage information from the apps' users for analytics purposes. *See* Opp'n at 6-7 (citing FAC ¶ 45). Plaintiff's attempt to criminalize this routine internet functionality should be rejected and his FAC dismissed.

## II. ARGUMENT

### A. Plaintiff Pleads No Cognizable Injury and Thus Lack Standing

Plaintiff can only muster generalized averments that Kochava "intercepts Plaintiff's communications, data, geolocation, and other interactions ('private information')" (Opp'n at 1-2) and that "he 'owns a mobile cellular telephone phone that use application(s) containing the Defendant's software development kit (SDK),'[1] FAC ¶ 37; that 'Defendant utilizes its embedded SDK to track his geolocation, and to monitor and intercept communications related to his personal characteristics,' *id.* ¶ 38; and that Defendant sells

[1] Plaintiff's arguments in his opposition that this alleged unauthorized "interception" by Kochava's SDK is belied by Plaintiff's own allegations regarding consent. Plaintiff *himself* alleges that he and Class Members voluntarily installed apps on their phones that contained Kochava's SDK (FAC ¶¶ 37, 38, 67, 76), and that they had consented to any alleged data collection because they received "a disclaimer or a warning" and they had an opportunity to opt-out from such data collection. FAC ¶ 104. As such, Plaintiff's assertion that Kochava acted "without permission" is contrary to his own allegations in his FAC. *See* Cal. Penal Code § 502 (c)(1), (2), (7).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

access to this data on online marketplaces[.]" Opp'n at 4-5. "Private" data cannot be circularly defined as "private information," "personal characteristics," or "sensitive data." To the extent that Plaintiff does specify data, he does so not for himself, but for "users" generally: "Defendant's SDK intercepts, gathers and transmits data and communications that reveal a *user's* gender, as well as their longitude, latitude, country, state, and city when they communicate with an app. FAC ¶ 82. Defendant's SDK even tracks a *user's* cell phone *after* they have proactively turned tracking off and declined to share data with an app. FAC ¶ 72. Defendant then uses this private information to 'fingerprint' *individuals* across the internet in order to generate revenue from the targeted marketing and sale of this information to third parties. " Opp'n at 2 (emphasis added). These allegations say nothing about the injury that Plaintiff himself allegedly suffered, and he may not use the alleged injuries of every person who carries a mobile device as a proxy for his own injury.

"Without more particular pleading," neither the Court nor Kochava can "determine . . . if the data collected is 'sensitive and confidential' information. Indeed, '[a] person's general location is not the type of core, value, informational privacy" protected under the law. *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (citing *Hill v. NCAA*, 7 Cal.4th 1 (1994); *Fredenburg v. City of Fremont*, 119 Cal.App.4th 408 (2004)). Therefore, "[i]t is entirely speculative that geolocation data was ever collected from . . . Plaintiff while at a sensitive or confidential location." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 199; *see* FAC ¶ 5 (the SDK "*can* even include the ability to track users' locations through public Bluetooth beacons, which enable fine-grained tracking indoors."); ¶¶ 8-9 (data "*can*" be de-anoymized and "*can*" be linked, but no allegations that it is, let alone to a specific individual). "[S]imply carrying a mobile device does not give [Kochava] the ability to track a user. It is entirely speculative what data [Kochava] collected." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 199. Altogether, plaintiff's non-specific allegations are insufficient to plead injury as a matter of law. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiff bears the burden to establish standing by alleging actual, particularized harm).

Plaintiff relies heavily on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Tracking Litig.*"), which is inapposite and distinguishable. There, the plaintiffs pled individualized facts alleging they *personally* suffered a privacy injury. In that case, plaintiffs alleged that although they had logged out of their Facebook accounts, Facebook continued to collect their web-browsing information outside of Facebook and across third party sites through embedded referrer headers. *Id.* at 596, 602. In contrast, here, Plaintiff alleges nothing about his own actions, device or browser settings, whether he opted out of advertisement tracking on his device, or even what site or app Plaintiff was using when his "private" information was collected by Kochava. Plaintiff cannot rest on generalized allegations about Kochava's data practices; rather, he must allege specific facts showing that he was personally subjected to the challenged practices to show an "actual injury" to himself. *In re iPhone App. Litig.*, 2011 WL 4403963, at *4–5 (N.D. Cal. Sept. 20, 2011). Plaintiff has not done so.

### B. Plaintiff Cannot Meet the High Bar Required to Plausibly State a Claim for Invasion of Privacy

Plaintiff attempts to diminish the high bar required to plead an invasion of privacy under California law by arguing that "questions of whether conduct is egregious, offensive, or violates societal norms … are typically more appropriately resolved by a jury." Opp'n at 9 (internal quotations omitted). Plaintiff conclusorily argues that "Plaintiff here has alleged an invasion of his right to privacy" because this case is similar to *Facebook Tracking Litig.*, 956 F.3d at 589. But Plaintiff fails to identify a single allegation in the FAC that supports his conclusory arguments that Kochava's conduct was highly offensive.

Indeed, courts have held that data collection and disclosure to third parties that is "routine commercial behavior" is not a "highly offensive" intrusion of privacy. *See id.* ("[a] person's general location is not the type of core, value, informational privacy explicated in *Hill*."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *Google Priv. Pol'y*, 58 F. Supp. 3d at 988 (Google's collection and disclosure of users'

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

browsing histories was not highly offensive); *iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms). Even disclosure of highly personal information such as social security numbers is not "highly offensive." *Low*, 900 F. Supp. 2d at 1025.

Plaintiff attempts to analogize this case to *Facebook Tracking Litig.*, 956 F.3d 589, but this case is clearly distinguishable. In that case, the plaintiffs alleged that Facebook obtained "an enormous amount of individualized data" by collecting URLs of third-party websites that could disclose the "search term" inputted by users which could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." *Id.* at 603, 605. The court emphasized that the data collection occurred after users had logged out of their Facebook accounts, *which contravened its affirmative statements to users* that it would not receive information from third-party websites after users had logged out. *Id.* at 603-04. In contrast, Plaintiff's FAC does not allege that Kochava's data collection is deceitful or in contravention of any representation made to Plaintiff. In fact, Plaintiff argues the opposite in the Opposition – that he had "no knowledge that Defendant existed." Opp'n at 13, 21; FAC ¶ 157. As such, *Facebook Tracking Litig.* is clearly distinguishable. Because Plaintiff has not alleged that Kochava's conduct is plausibly "highly offensive" or "egregious," the common law and constitutional privacy claims fail.

### C. Plaintiff Fails to Plead "Damage or Loss" and Circumvention, as Required by the CDAFA

Plaintiff alleges no cognizable damage or loss under the CDAFA. To state a CDAFA claim, a private owner of data must adequately allege that he "suffer[ed] damage or loss by reason of a violation of" CDAFA. Cal. Penal Code § 502(e)(1). Plaintiff alleges Kochava "was unjustly enriched by intercepting, acquiring, taking, or using Plaintiff's and Class members' data, communications, and personal information without their permission, and using it for Defendant's own financial benefit." FAC ¶ 173. These allegations are

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

wholly insufficient to satisfy the CDAFA. *See e.g. Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("the loss of the right to control [plaintiffs'] own data, the loss of the value of [plaintiffs'] data" is not 'damage or loss' within the meaning of the CDAFA"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949-51 (N.D. Cal. 2014) (generalized and "entirely speculative" assertions of loss, "devoid of any specific details from which a factfinder could calculate an amount of loss," were insufficient to state a claim under the CDAFA). Plaintiff fails to allege any tangible, non-speculative loss; indeed he fails to respond at all to Kochava's argument that his unjust enrichment claim fails, further precluding any damage claim on this basis.

In *Brown*, the court confirmed that CDAFA requires that "a barrier be circumvented." 525 F. Supp. 3d at fn. 7. Further, Plaintiff wrongly states that *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ("*Power Ventures*") is outdated authority to the extent Kochava relies upon it, but *Carrier IQ* extensively relies on the same case, even noting that "courts in this District have largely adopted [*Power Ventures*'] 'overcoming technical or code based barriers' test as the operative test to determine if Defendant acted without permission.[2] 78 F. Supp. 3d at 1099. Further, the critical distinction between *Brown* and *Carrier IQ* and Plaintiff's allegations herein is that in the former, the courts found that there was "hidden code [in software] would render ineffective any barrier Plaintiffs wished to use to prevent the transmission of their data," plaintiffs had "no opportunity to opt out," and the data was "transmitted without notice." *See Brown*, 525 F. Supp. at 1075. Here, Plaintiff alleges consent to any purported data collection – an admission that precludes Plaintiff's CDAFA claim.[3]

[2] In fact, many courts post-*Carrier IQ* hold that the circumvention requirement remains a part of the CDAFA. *See, e.g., Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1053 (N.D. Cal. 2018); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *5 (N.D. Cal. Jan. 22, 2018).

[3] Further, Plaintiff's arguments that he sufficiently alleged that "Kochava took active steps to circumvent privacy barriers" and that Plaintiff plausibly alleges same in the FAC are disingenuous. *See* Motion p. 14. In the FAC, Plaintiff misleadingly alleges that Kochava "bypassed the intent of the ATT [App Tracking Transparency] framework" by collecting "both IDFA and IDFV, even after a consumer thinks they have disabled all tracking by apps on an iPhone." Motion, p. 8. However, Plaintiff's own additional allegations contradict his own assertion as Plaintiff concedes IDFA is *not collected* and is

### D. Plaintiff Fails to Plausibly Allege that Kochava Learned the Contents of an Intercepted Communication under CIPA § 631

Plaintiff's Opposition confirms that Plaintiff fails to state his California Penal Code § 631 claim against Kochava. First, Plaintiff argues that Kochava's SDK is the type of software that falls within the definition of Section 631(a)'s "machine, instrument, contrivance, or . . . other manner," but the cases Plaintiff relies on for this conclusion are inapposite. Opp'n at 15-16. In *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1-2 (N.D. Cal. Oct. 23, 2019), the court simply assumed that § 631(a) could apply to customer interactions with a website, and instead focused its analysis on whether such interactions constitute a "communication" under the statute. As discussed above, both *Brown* and *Facebook Tracking Litig.* are inapposite. In *Brown*, plaintiffs "allege that Google violated the Wiretap Act by intercepting internet communications that Plaintiffs were sending and receiving while they were browsing the internet in private browsing mode." 525 F. Supp. 3d at 1071. In *Facebook Tracking Litig.*, the court emphasized that the data collection occurred after users had logged out of their Facebook accounts, *which contravened its affirmative statements to users* that it would not receive information from third-party websites after users had logged out. 956 F. 3d at 603-04. Both of these cases are distinguishable – there are no allegations in the FAC of Kochava's deceit, and as discussed above, Plaintiff's allegations regarding his ATT privacy settings are nonsensical, contradictory and misleading. *See supra*, fn. 3; *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021) (an iPhone app is not a "telephone instrument" within the meaning of Section 631(a).)

Second, Plaintiff still points to no factual allegations that Kochava learned the *contents* of any *intercepted* communication. *See* Cal. Pen. Code § 631(a). Indeed, Plaintiff makes no attempt to identify any communication. For example, Plaintiff alleges no facts describing the parties to the alleged communications or the contents or meaning of said

---

"automatically redacted as of iOS 14.5 if ATT authorization has not been granted," which is the intended framework of Apple's ATT. *See id.*

-6-
**KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

communication. Worse, Plaintiff fails to allege that Kochava intercepted an electronic communication *from him*, which is grounds alone for dismissal. *See Bradley v. Google, Inc.*, 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006).

Plaintiff's claim fails because the information Kochava allegedly collects amounts at best to unactionable "record information" associated with a communication, as opposed to the "contents" of an intercepted communication. *See In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014); *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *6–7 (N.D. Cal. Aug. 30, 2019).[4] Plaintiff's conclusory argument that "the data intercepted by Kochava in this case goes far beyond the automatically generated [data]," is meritless. In support of his arguments, Plaintiff relies on *Hammerling* and *Meta Pixel* that are distinguishable. In *Hammerling*, the court held Plaintiff's allegations "that Google not only collected data regarding 'when and how often they interact' with third party apps, but *particular activity on those apps*, including products they searched for and services they used within the application," sufficiently alleged "contents" under CIPA. *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (emphasis added). The FAC's vague and generalized allegations do not come close to meeting this pleading standard. In *In re Meta Pixel Healthcare Litig.*, the communications at issue concerned highly sensitive communications involving "plaintiffs' internet communications on their *healthcare providers' websites*." 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) (emphasis added). Plaintiff does not allege that Kochava obtained the contents of his medical-related communications.

### E. Plaintiff Fails to Plausibly Allege that Kochava Recorded Confidential Communications under CIPA § 632

The California Supreme Court has held that "a conversation is confidential under

---

[4] The Ninth Circuit has held that "contents" means "the intended message conveyed by the communication[,]" not "record information regarding the characteristics of the message that is generated in the course of the communication." *Zynga*, 750 F.3d at 1106. "Contents" does not include "the name, address and subscriber number or identity of a subscriber or customer." *Id.* (cleaned up). "Similarly, the origin, length, and time of a call, or geolocation data are not content." *Graham*, 533 F. Supp. 3d at 833 (citing *United States v. Reed*, 575 F.3d 900, 914-17 (9th Cir. 2009); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019)).

section 632 if a party to that conversation has an *objectively* reasonable expectation that the conversation is not being overheard or recorded." *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013) (citing *Flanagan v. Flanagan*, 27 Cal.4th 766, 777 (2002)) (emphasis added).

Plaintiff fails to allege facts regarding alleged "confidential" communications. For example, Plaintiff does not allege the contents, the intended recipients, and the nature of these purportedly confidential communications. Rather, the types of communications and data alleged in the FAC, without more specific allegations, is nothing more than automatically generated data, for which Plaintiff does not allege why he had an objectively reasonable expectation that the communication was not being recorded as part of the apps' functionality. *See U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Plaintiffs could not have held a subjective expectation of privacy because Internet users have no expectation of privacy in the . . . IP addresses of the websites they visit … Plaintiffs should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information").

And, Plaintiff's continued reliance on *Brown* is misplaced. As discussed above, *Brown* involves a user's private browsing session. 525 F. Supp. 3d at 1071. Contrary to Plaintiff's arguments that he took steps to protect the confidentiality of his communications, Plaintiff's allegations regarding his ATT privacy settings are nonsensical and contradictory in that he acknowledges that advertising identifiers are redacted when ATT is turned on. *See supra*, fn. 3. Not only is Kochava left to guess what communications Plaintiff considers confidential, but Plaintiff also fails to sufficiently allege that he disabled application tracking by turning ATT on.

### F. Kochava's SDK Is Not a Pen Register or Trap and Trace Device under CIPA § 638.51

Plaintiff's assertion that Kochava's SDK is a "pen register" under California Penal Code § 638.51 is meritless. The statute and case law are clear that Section 638.51 does not apply to software, like Kochava's SDK, which is not a "pen register" or "trap and trace

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

device." A "pen register" records the numbers dialed out from a particular telephone line. *Smith v. Maryland*, 442 U.S. 735, 736, fn. 1 (1979); *People v. Blair*, 25 Cal.3d 640, 654, fn. 11 (1979). A "trap and trace device" records the originating telephone numbers of the calls dialed into a particular telephone line. *People v. Suite*, 101 Cal.App.3d 680, 684 (1980). Plaintiff's own allegations and arguments confirm that an SDK does not fit within these definitions. *See* Opp'n at 1-2; FAC ¶¶ 23-25; 77-81.

Indeed, it is clear from its legislative history that this statute was never intended to be interpreted as applicable to software, like Kochava's SDK or private companies, like Kochava. The Legislature adopted, and on August 13, 2015, the Governor signed, Assembly Bill 929 adding various Penal Code provisions pertaining to a "pen register" and a "trap and trace device." 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (the Bill "authorizes *state and local law enforcement* to use pen register and trap and trace devices under state law, and permits the issuance of emergency pen registers and trap and trace devices.") (emphasis added). These new provisions were added to streamline the procedures utilized by *law enforcement* to seek judicial approval for a pen register or trap and trace device. *See* Caskey, Pen register/telephone records/GPS tracking, Cal. Search & Seizure § 10:21 (April 2022). Thus, the legislative intent reveals that Section 638.51 was enacted to streamline the procedures for law enforcement in connection with pen registers or trap and trace devices. *See Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) (statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute]"). There is nothing in the legislative history or intent to support Plaintiff's claim under Section 638.51.

### G. Plaintiff's UCL Unlawful Prong and Unfair Prong Claims Fail

Plaintiff conclusorily alleges that he sufficiently alleged his UCL claims because he suffered economic injury in two ways: (1) "his present and future interest in his personal data has been diminished based on Defendant's illegal collection and sale" and (2) "Plaintiff's data 'was acquire[d] in a transaction less … that he or she otherwise would

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

have.'" Opp'n at 19-24. But, the FAC does not allege these injuries and instead vaguely claims "Plaintiff and Class members were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial." FAC, ¶¶ 228, 234. Simply reciting legal authorities in support of his conclusory allegations does not establish the required elements of this claim.

Further, despite Plaintiff's attempt to bolster his bare-bones allegations regarding economic injury, the FAC actually never mentions or describes the economic value of Plaintiff's personal information. Such failure is fatal to Plaintiff's argument that he has standing to assert his UCL claims. *See Mastel*, 549 F. Supp. 3d at 1144–45. Numerous courts have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides *specific* allegations regarding the value of the information. *See id*.[5] As discussed above, there are no such specific allegations in the FAC.

And, because Plaintiff has failed to allege any predicate unlawful or unfair conduct for the reasons discussed above, his UCL claim fails. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1167 (9th Cir. 2012); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021); *see Hammerling*, 2022 WL 2812188, at *15.

## III. CONCLUSION

For the reasons set forth above, Kochava respectfully requests that this Court dismiss Plaintiff's FAC with prejudice.

/ / /

/ / /

/ / /

/ / /

[5] *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, *22 (N.D. Cal. Aug. 30, 2017); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) ("A plaintiff's 'personal information does not constitute property under the UCL."); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL invasion of privacy claim because "plaintiffs have failed to demonstrate how ... unlawful collection and recordation of personal information ... translates into a loss of money or property").

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Respectfully submitted,

Dated: January 23, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Craig J. Mariam*
Craig J. Mariam
Hazel Mae B. Pangan
Elena A. Kuzminova
Attorneys for Defendant
Kochava Inc.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/ Craig J. Mariam*
Craig J. Mariam